**EXHIBIT A**

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Mark Filip | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 06 C 6893 | **DATE** | 6/11/2007 |
| **CASE TITLE** | Andre and Bessie Drake vs. City of Chicago, et. al. | | |

**DOCKET ENTRY TEXT**

Plaintiffs' reconsideration motion regarding the stay of discovery in this case (D.E. 36) is respectfully denied. Certain limited clarifications are stated below. Plaintiffs are free to revisit this subject in a reasonable time (*e.g.*, 90 or 120 days) via a lift-stay motion if they believe facts and circumstances warrant.

*Mark Filip*

■ [ For further details see text below.]                                    Docketing to mail notices.

### STATEMENT

Plaintiffs filed this suit against the City of Chicago and several Chicago police officers in December of 2006. (D.E. 1.) On March 14, 2007, this Court granted Defendants' motion for a stay of discovery. (D.E. 31.) Before the Court is Plaintiffs' motion to reconsider this ruling. (D.E. 37.) Plaintiffs recently filed a motion to lift the stay based on the City's purported failure to comply with a condition of it—*i.e.*, that certain potentially relevant documents with respect to discovery not be destroyed. (D.E. 52.) That motion has been continued until June 12, 2007, (D.E. 54), and it is not addressed by this opinion.

### RELEVANT FACTS

The Court takes the relevant facts from Plaintiffs' Second Amended Complaint ("Complaint") (D.E. 44), the Defendants' motions to stay discovery (D.E. 25, 28), representations made by counsel at the hearing in this Court on March 15, 2007 (D.E. 36-6), and the various exhibits attached to Plaintiffs' briefing on the motion for reconsideration. (D.E. 36.) The Court accepts the allegations in the Complaint as true at this stage of the proceedings, and takes no position on whether the allegations are in fact true.

Plaintiff Andre Drake ("Drake") was at his grandmother's house on April 6, 2006, when he heard the sound of a gate in the gangway adjacent to the house rattle and shake. (D.E. 44 ¶ 6.) When Drake went to investigate the noise, Defendant CPD Officer Timothy Parker ("Parker") appeared and screamed at Drake to put his hands up. (*Id.* ¶¶ 6-7.) When Drake stated that no one went into his house, Parker told Drake to "shut up!" (*Id.* ¶ 8.) Parker went from room to room searching the house, and then grabbed Drake by the collar of his shirt and allegedly attempted to slam him to the ground. (*Id.* ¶¶ 9-10.) While Parker allegedly held Drake by the collar, Defendant CPD Officer Keith Herrera ("Herrera") allegedly struck Drake in the left eye with a closed fist. (*Id.* ¶ 11.) Parker then allegedly shoved Drake against a stove, cutting his head. (*Id.* ¶ 12.) When Drake told the officers that he was giving up, Herrera and Parker pinned him against the stove and handcuffed

| STATEMENT |
|---|

him. (*Id.* ¶¶ 13-15.) In the midst of handcuffing Drake, Herrera discharged pepper spray into Drake's right eye. (*Id.* ¶¶ 14-15.) After Drake was handcuffed, one of the officers allegedly kicked him to the ground. (*Id.* ¶ 16.) When Drake told the officers that they were weak for brutalizing him, Herrera allegedly kicked him in the chest. (*Id.* ¶ 17.) Bessie Drake, who was watching from the doorway in silence, asked the officers why they were kicking her grandson while he lay on the floor handcuffed. (*Id.* ¶ 18.) Herrera allegedly pushed Ms. Drake backward onto her knees, and then turned and allegedly kicked Drake in the chest again. (*Id.*) When Ms. Drake again asked Herrera why he did that, he ordered Ms. Drake back into her room. (*Id.*) All of the officers stormed the Drake house, going into almost every room, allegedly tearing up the contents and destroying or damaging personal property. (*Id.* ¶ 19.) Among the items allegedly destroyed were some chairs and Ms. Drake's ironing board. (*Id.*)

The Officers charged Drake with unlawful use of a weapon by a felon, attempted disarming of a police officer, unlawful possession of cannabis, aggravated battery, and resisting a peace officer. (*Id.* ¶ 20.) Drake remained in custody for nine days. (*Id.*) Plaintiffs allege that the Officer Defendants conspired to falsely charge him with these crimes. (*Id.* ¶ 23.) The case against Drake was eventually dismissed by a *nolle prosequi*. (*Id.* ¶ 21.)

The Chicago Police Department's Office of Professional Standards ("OPS") conducted an investigation into the Drakes' claims. (D.E. 36-4.) On May 10, 2006, OPS sent a letter to Ms. Drake stating that the after reviewing all the available evidence, OPS has made a finding that the complaint was unfounded. (*Id.*) According to the Drakes' affidavits, aside from OPS, no officials have contacted or attempted to contact them regarding their claims. (D.E. 36-5, 36-6.) (Normally, of course, law enforcement authorities do not contact citizens about whether they have been victims of crimes; instead, the communication is initiated by the citizen-complainant(s) to law enforcement officials. The Drakes do not allege that they reported the alleged incident to the F.B.I., or to civil rights authorities with the Department of Justice or U.S. Attorney's Office, or to the Internal Affairs Division of the Chicago Police Department, or that they filed any criminal complaint with the police department.)

Plaintiffs bring twelve counts against the Defendants based on this alleged incident. They include a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 (Count I); Section 1983 claims based on false imprisonment (Count II), Excessive Force (Count III), Illegal Searches and Seizures (Count IV), and Failure to Intervene (Count V); a *Monell* claim against the City of Chicago (Count VI); a respondeat superior claim against the City of Chicago under 745 ILCS 10/9-102 (Count VII); and state law claims for malicious prosecution (Count VIII), battery (Count IX), false arrest (Count X), intentional infliction of emotional distress (Count XI), and conversion (Count XII). Plaintiffs allege that "[a]ll of the Officer Defendants aided each other in the commission of the crimes described throughout this Complaint." (D.E. 44 ¶ 22.)

In October of 2006 and January of 2007, grand juries of the Circuit Court of Cook County returned ten multiple count indictments against Herrera. (D.E. 25 ¶ 4, D.E. 25-2.) The indictments accuse Herrera of armed violence, armed robbery, home invasion, residential burglary, theft, two counts of unlawful restraint, three counts of obstruction of justice, and four counts of official misconduct. (D.E. 25 ¶ 4; D.E. 48-4.) On March 14, 2007, this Court granted Herrera's motion to stay discovery and the proceedings in the case in light of parallel criminal proceedings against him. (D.E. 31.)

On March 15, 2007, Ms. Geri Lynn Yanow appeared in this Court on behalf of the non-indicted Defendants in this case—Officers Delbosque and Parker. (D.E. 36-2.) Ms. Yanow is a respected attorney

## STATEMENT

well-known in the courthouse. Ms. Yanow stated that she had been in contact with the State's Attorneys office and that they explained that they "are very concerned about any ongoing discovery because their criminal investigations are still ongoing." (D.E. 36-3 at 2.) Ms. Yanow further stated that she asked the State's Attorney if her clients were targets in this matter, and she was told that since the investigation is ongoing they could not tell her "whether or not any of the non-indicted officers, many of whom are cooperating witnesses in the investigation, are subject to indictment or grand jury things concerning any other cases that might go up." (*Id.*) The Court granted Delbosque and Parker's motion to stay discovery in the case, subject to the condition that the City would verify that it is not going to destroy any relevant underlying documents related to these officers. (D.E. 36-3 at 5, D.E. 32.)

In support of their motion to stay, Plaintiffs' counsel has submitted an affidavit stating that he inquired at the State's Attorney's Office with ASA Navarro, who apparently is involved with the investigation of the Special Operations Section ("SOS") officers like Officer Herrera, Parker, and Delbosque. (D.E. 36-7.) According to Plaintiffs' counsel, Navarro stated that he had never heard of the Drakes and that the investigation is focused on claims that SOS officers stole from their victims. (*Id.*) Plaintiffs' counsel offer no explanation as to how that representation can be squared with the fact that the extant criminal charges reach far more broadly than simple theft issues—as the indictments against Herrera include charges of armed violence, home invasion, aggravated unlawful restraint, official misconduct, and obstruction of justice. (D.E. 25 ¶ 4; D.E. 48-4.) Nor do Plaintiffs offer any assurance (nor could they, obviously) that the grand jury investigation is not free to look at broader possible criminal allegations on an ongoing or future basis—that is a fundamental purpose, of course, of a grand jury investigation, particularly one that already has generated significant criminal indictments. Plaintiffs also have submitted affidavits from Andre and Bessie Drake stating that their claims of police misconduct do not include allegations that anything was stolen from them. (D.E. 36-5, D.E. 36-6.) Plaintiffs do not convincingly square this representation with the fact that their Second Amended Complaint includes a $100,000 claim for conversion of their property, as well as a civil racketeering allegation that seemingly seeks to recover $4.5 million based on an alleged pattern of misconduct by Defendants—as presumably directed against, at a minimum, the Plaintiffs—that includes "robbery," as well as kidnapping, obstruction of justice, and witness intimidation. (D.E. 44 ¶ 26.)

## STANDARD OF REVIEW

A court may address a motion to reconsider when the court has not entered a final judgment in a matter. *United States v. Ligas*, No. 04 C 930, 2005 WL 1669894, at *1 (N.D. Ill. May 17, 2005) (collecting cases). The Seventh Circuit teaches that a motion to reconsider is appropriate where: (1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has been a controlling or significant change in the law since the submission of the issue to the court; or (5) there has been a controlling or significant change in the facts since the submission of the issue to the court. *Id.*; *Bank of Waunakee v. Rochester Cheese Sales*, 906 F.2d 1185, 1191 (7th Cir. 1990).

## ANALYSIS

The Defendants' stay of discovery motions were predicated on a request to respect and accommodate their rights under the Fifth Amendment of the Constitution not to incriminate themselves. The Court is thus called upon to attempt to balance the pace of discovery against the Defendants' rights and interests under the Fifth Amendment, and to reach a sensible plan for the pace of discovery in the case in light of the various competing interests and circumstances at stake.

Case 1:06-cv-06893 Document 56 Filed 06/11/2007 Page 4 of 12

## STATEMENT

Defendants' motions do not contend that the Fifth Amendment simply forbids moving forward with discovery in this case as a matter of law. Nor could they: caselaw reflects that "it is not unconstitutional to force a party to choose between his Fifth Amendment rights and the adverse inference he may face by failing to testify in a civil proceeding." *U.S. v. All Meat and Poultry Products Stored at Lagrou Cold Storage*, 02 C 5145, 2006 WL 27119, at *1 (N.D. Ill. Jan. 4, 2006) (internal citation and quotation marks omitted). Nevertheless, precedent likewise recognizes that "even though the constitution does not *compel* a stay [under such circumstances], the district court is free to issue one in its discretion." *Id.* (citing, *inter alia, United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970)) (emphasis added); *accord, e.g., Cruz v. County of DuPage*, No. 96 C 7170, 1997 WL 370194, at *1 (N.D. Ill. June 27, 1997) (district court has the inherent power to stay discovery or proceedings in a civil case to protect competing Fifth Amendment interests arising from related or parallel criminal proceedings); *Bruner Corp. v. Balogh*, 819 F. Supp. 811, 813 (E.D. Wis. 1993) (collecting cases and holding that a district court may impose a stay in civil action to protect Fifth Amendment interests of persons with respect to criminal investigation). To determine whether a stay of discovery should be granted, a court should consider these general guidelines: (1) the extent to which the issues in the criminal and civil matters overlap, and whether the government initiated both proceedings; (2) the posture of the criminal proceedings; (3) the interests of the plaintiffs in proceeding expeditiously with this litigation and the potential prejudice to plaintiffs of a delay; (4) the burden the proceedings may impose on defendants; (5) the convenience of the court in the management of its cases; and (6) the interests of persons not parties to the civil litigation and of the public in pending civil and criminal litigation. *See, e.g., All Meat*, 2006 WL 27119 at *2. The party seeking a stay has the burden of showing that it is necessary. *Bd of Trustees v. Nationwide Life Ins. Co.*, No. 04 C 821, 2005 WL 711977, at *9 (N.D. Ill. Mar. 28, 2005). Whether to issue a stay of discovery, like all decisions concerning the setting of the pace or parameters of discovery, is a subject commanded to the informed discretion of the trial court. *See, e.g., Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 851 (7th Cir. 2002); *Bruner*, 819 F. Supp. at 814.

Before proceeding to analyze the factors identified above, the Court wishes to clarify a threshold issue, if such clarification is warranted. As the Court at least attempted to make clear in prior proceedings, the stay of discovery in this case is not a perpetual one, as the Plaintiffs sometimes appear to suggest. *See, e.g.*, D.E. 36-3 (status hearing transcript) at 7 (Court explaining that Plaintiffs' attorneys were "free to follow up" on certain issues they alluded to, and that if they came "upon information that would indicate that there is reason to think that it [*i.e.*, the stay of discovery in light of parallel criminal investigations] should be lifted 48 hours or 48 days from now or whatever, I'm happy to consider your [lift-stay] motion when you make it."); *id.* ("[I]f you have any lift stay motion, you're free to present it as you wish."). There is at least some evidence that Plaintiffs understood this dynamic—in that they have since filed a lift-stay motion concerning the City of Chicago's alleged inability to ensure that potentially relevant documents for discovery are not being destroyed (D.E. 52)—yet, at times, Plaintiffs' reconsideration motion suggests that the discovery stay is necessarily going to extend for years and years. In trying to understand the source of this seeming inconsistency, the Court notes that it is at least possible that the wording of one of the minute orders initially issued in the case has contributed to the problem. That minute order stated that, "Defendant Herrera's motion to stay proceedings in the civil matter until a final disposition is entered in the related felony proceedings pending in the Circuit Court of Cook County, Criminal Division is granted." (D.E. 31.) A later minute order—one that relates to the at-least-presently-unindicted Defendants, Officers Delbosque and Parker—hopefully would have ameliorated any confusion, in that it explained that the stay of discovery as to them was "granted subject to conditions stated in court," which conditions included the Court's express explanation that the discovery stay was temporary and that the Plaintiffs' attorneys were free to file a lift-stay motion at any time if they believed circumstances had changed or warranted a different course. *See, e.g.*, D.E. 36-3 at 7, *supra*. Nonetheless, to the extent there is ambiguity, the Court apologizes and again wishes to make clear that the discovery stays

Case 1:06-cv-06893   Document 56   Filed 06/11/2007   Page 5 of 12

| STATEMENT |
| --- |

which have been entered are not being ordered into the indefinite future, without any regard to whether future circumstances will warrant a change of the situation concerning discovery. At the present time, when the grand jury investigation appears to be in its relatively early stages, at least, the Court believes a discovery stay to protect and respect the Defendants' Fifth Amendment rights is sensible. That conclusion is reinforced by the fact that allowing attorneys for Plaintiffs and the civil defendants to begin depositions of witnesses presents a substantial risk of interfering with the prosecution's efforts to assemble prosecutable cases in the difficult area of police corruption investigations, as discussed further below. The Court will revisit the propriety of maintaining that approach to discovery on a recurring basis in the future—for example, each 90 or 120 days, or presumably upon motion if any of the attorneys believes that a salient development has occurred that bears on the situation. It is possible that circumstances will warrant a different course—for example, if Officer Herrera were to plead guilty, or if Officer Parker or Delbosque were discovered to be cooperating witnesses or immunized witnesses in the state criminal proceedings.

In this latter regard, the Court reserves the right in the future, if appropriate, to ask those officers' counsel (*i.e.*, Ms. Yanow or another attorney) to inquire whether they have, in fact, been immunized or agreed to cooperate with authorities. Generally speaking, however, prosecutors typically, and prosecutors investigating police corruption allegations in particular (and this Court has experience in both of those settings) strongly believe that the success of their investigations will be hindered by the "outing" of their cooperating witnesses, at least before such a step is required in the criminal setting. Prosecutors in this context also typically are quite concerned about their potential witnesses in a criminal prosecution being deposed by the respective parties in a civil proceeding, a concern that seems to be present here, as usual. (*See* D.E. 36-3 at 2.) In that regard, the Court notes that Plaintiffs' attorneys propose deposing witnesses (and thereby prompting defense attorneys to begin deposing witnesses) to the alleged misconduct as against Plaintiffs, and seem to be equally if not more interested in initiating discovery and depositions concerning alleged misconduct directed against citizens who are not even represented by those lawyers. To the extent the Court makes inquiries of counsel for the at-least-presently-unindicted-Defendants, Officers Parker and Delbosque, about whether those officers are cooperating or have been immunized, the Court likewise reserves the right to request further input from the State's Attorney's Office about how it views the prospect of attorneys for the two sides plunging into depositions of the potential universe of witnesses covered by the grand jury investigation. All of these issues can be explored in the future; at the present time, at least, and for the reasons explained below, the Court believes the most prudent step is to wait on moving forward with discovery as against these civil Defendants, one of whom has already been charged by the State's Attorney's Office, and the others who would at least clearly appear to be individuals who would be classified as subjects of, if not targets of, the grand jury investigations.

(1)   Overlap Between the Civil and Criminal Cases and Government Involvement

In support of their motions to stay, Defendants stated that the indictment against Herrera and the ongoing criminal investigation into Herrera's SOS team concern the same subject matter as Plaintiffs' complaint. (D.E. 25 ¶ 10; D.E. 28 ¶ 1.) Plaintiffs contend that their suit does not concern the same subject matter because the investigation is focused on alleged thefts and "the Drakes do not claim anything was stolen from them." (D.E. 36-2 at 11.) However, the Court cannot take the Drakes' representations as true if they are contradicted by allegations in the Complaint. Count XII of their Complaint is titled "Conversion" and alleges that "defendants took and destroyed Andre and Bessie Drake's personal property . . . and never returned such property." (D.E. 44 at 19.) Plaintiffs explain that they "allege conversion in this case because the defendants destroyed their property and not because they stole it." (D.E. 51 at 3.) But Plaintiffs also allege that defendants engaged in "a pattern of racketeering activity . . . including but not limited to . . . robbery . . ." (*Id.*

Case 1:06-cv-06893   Document 56   Filed 06/11/2007   Page 6 of 12

## STATEMENT

¶¶ 22, 26.) Therefore, even if Plaintiffs are not alleging that Defendants stole from their homes, they have made robbery allegations, which they themselves claim is the focus of the State's Attorney investigation.

Moreover, the indictments against Herrera encompass far more than theft, and they include conduct similar to that alleged elsewhere in the Complaint, undermining Plaintiffs' claims about the supposed "focus" of the grand jury investigation. The indictments include allegations of home invasion, unlawful restraint, obstruction of justice, and official misconduct. (D.E. 25 ¶ 4; D.E. 48-4.) These allegations overlap with allegations in the Complaint that Defendants invaded the Drakes' home, violently assaulted Drake and his grandmother, unlawfully restrained Drake, and then conspired to falsely charge him with crimes. Moreover, Plaintiffs' putative RICO count at least attempts to allege a pattern of racketeering activity which includes violence, robbery, and obstruction of justice. (D.E. 44 ¶ 26.) This allegation is not limited to the incident at the Drake home—seemingly suggesting that the Plaintiffs' putative proof (although presumably not their damages) will be based on evidence of alleged misconduct directed at individuals not even parties to this case or represented by Plaintiffs' counsel. Such an expansive putative scope of this case, and the related discovery that Plaintiffs' attorneys will seek, therefore overlaps with the charges in Herrera's indictment and the scope of the ongoing grand jury investigation. As a result, whether or not the incident described in the Complaint is presently or specifically the subject of the ongoing criminal investigation, the allegations in the Complaint are sufficiently similar to the indictments to militate in favor of a stay. *See Doe v. City of Chicago*, 360 F. Supp. 2d 880, 881 (N.D. Ill. 2005) (finding that stay was warranted where "[t]he state criminal charges pertain to the same time period and same general sets of allegations made in the Plaintiff's civil suit"). This analysis applies to the non-indicted defendants as well, since the State's Attorney is currently investigating their SOS team. *See id.* (explaining that the same subject matter is involved in civil and criminal cases where alleged criminal episode is closely related to civil claims, including as to those civil defendants who "are not parties in the criminal proceedings"); *accord, e.g., Bruner Corp*, 819 F. Supp. at 816 & n.6 (collecting cases where stay addressed both current parties in criminal and civil cases as well as related civil defendants who were not presently defendants in the criminal case); *United States v. All Meat and Poultry Prods.*, No. 02 C 5145, 2003 WL 22284318, at *4 (collecting cases and stating, "[i]n such instances as here, where the indicted individual defendants appear to be the central figures in both the civil and criminal proceedings, courts have determined that the better course is to enter a stay as to all defendants").

In analyzing whether the suits overlap, courts have also looked to whether the civil action is brought by the government. When the government initiates both criminal and civil proceedings, there is a danger that the government might use the civil discovery process to obtain evidence for use in the criminal prosecution. *See, e.g., Doe*, 360 F. Supp. 2d at 881. In this case the civil suit is not brought by the government, but numerous district courts have found that a stay is warranted where the civil suit is brought by a private party. *See, e.g., Cruz*, 1997 WL 370194, at *3 (collecting cases); *Bruner Corp.*, 819 F. Supp. at 814 (collecting cases).

(2)   Posture of the Criminal Investigation

The State's Attorney's Office has not divulged much information beyond the fact that the investigation is still ongoing. (D.E. 36-3 at 2.) The Court cannot be certain as to whether Herrera's co-defendants are targets or cooperators with the investigation. This uncertainty weighs in favor of a stay (and certainly militates in favor of a limited stay with Plaintiffs able to revisit the issue in 90 or 120 days, when further information may be available about the likely scope of the grand jury investigation). As discussed further below, under any scenario there is the substantial potential that the civil action will interfere with the criminal process.

## STATEMENT

    (3)    Prejudice to Plaintiffs by Granting the Stay

    Plaintiffs contend that if they are not allowed to immediately proceed with civil discovery in this case, "[w]hile Herrera's criminal proceeding unfolds over the course of several years, the statute of limitations" concerning, for example, Officers Parker and Delbosque "will pass." (D.E. 36-2 at 4-5.) This contention, with all respect, reflects a substantial and seemingly unjustified lack of respect for the prosecutors pursuing the SOS prosecution. They surely are not unaware of the existence of statutes of limitations, and they seemingly are aggressively investigating the SOS allegations. So—even putting aside the fact that Plaintiffs offer no basis to believe that the extant Herrera prosecution will require "several years" to conclude—there is no basis to believe that a stay of discovery currently in this case will impede the prosecution prospects of the State's Attorney's Office. Again, normally prosecutors do not want private civil attorneys (including attorneys for targets or subjects of a grand jury investigation) outing and deposing their witnesses; that risk is particularly acute here, as Plaintiffs' attorneys seem eager to begin discovery on episodes outside the scope of the Drake affair so as to attempt to advance a broader civil RICO claim whose scope appears to clearly overlap with the grand jury's work. Moreover, to the extent Plaintiffs are arguing that they should be allowed to move forward with the civil discovery process to gather incriminating evidence against Defendants that would lead to criminal charges, this argument actually supports a stay, as it normally is deemed improper to use civil discovery proceedings to further a criminal investigation. *Jones v. City of Indianapolis*, 216 F.R.D. 440, 451 (S.D. Ind. 2003) (stay is appropriate where, under civil discovery rules, the plaintiff "could obtain information that may substantially harm Defendants' interests if criminal indictments are handed down"). There is already an ongoing investigation into SOS misconduct similar to that alleged by Plaintiffs. If Plaintiffs are concerned that the statute of limitations for criminal prosecution will expire before charges are brought based on their claims, the proper recourse is for Plaintiffs to file a criminal complaint with the FBI or other law enforcement authorities—subject to any applicable attorney-ethics rules about such contacts, if Plaintiffs' attorneys are involved. (The Court notes in this regard that Plaintiffs never have even filed an incident report with the FBI, or contacted civil rights prosecutors at the U.S. Attorneys' Office or otherwise in the Department of Justice, or filed any incident report or criminal complaint with local or state authorities.)

    Plaintiffs also argue that they will suffer prejudice if Bessie Drake were to pass away before the stay in this case is lifted. (D.E. 36-2 at 5-6.) This concern is ameliorated by the fact that both parties have agreed to a videotaped deposition of her that was scheduled to occur on June 8, 2007. (D.E. 48 at 7; D.E. 48-2.) Plaintiffs also argue generally that memories will fade and witnesses will be harder to assemble if discovery in the case is stayed. (D.E. 36-2 at 6.) While this concern does weigh in Plaintiffs' favor, it applies to virtually all stays and is simply one of the interests that must be balanced in this area under the caselaw. Finally, Plaintiffs note that Bessie Drake is elderly and suggest that a stay of discovery is effectively a refusal to ever afford her justice during her lifetime. With all respect, the again hyperbolic rhetoric of Plaintiffs' counsel is overstated. While the Court is certainly respectful of Ms. Drake's age, there is no contention that she is seriously ill (she is alleged to have diabetes, a condition afflicting some twenty-one million Americans, according to the U.S. Centers for Disease Control and Prevention), and the Court, again, has not stayed discovery into perpetuity. This consideration, while militating in Plaintiffs' favor, does not warrant disregarding the other circumstances in the case that warrant an abatement of discovery, at least for the present time, so as to respect the Defendants' Fifth Amendment interests and to prevent interference with the ongoing grand jury investigation.

    (4)    Prejudice to Defendants if Stay is Lifted

    Both Herrera and the non-indicted defendants face substantial potential prejudice if discovery is not

## STATEMENT

stayed. Herrera has already been indicted, and his co-defendants are members of the same SOS team that is the subject of an ongoing investigation involving the same alleged misconduct—including misconduct that seemingly is clearly encompassed by Plaintiffs' allegations. Therefore, Defendants will all be placed in the same position if civil discovery were allowed to proceed against them. They would either have to surrender their Fifth Amendment rights against self-incrimination, or not testify and risk the possibility that adverse inferences might be taken against them as a result. *See Jones*, 216 F.R.D. at 451-52 (collecting cases). It is not unconstitutional to subject them to this cross-fire, but a court has discretion to stay discovery in the civil case to "so that a defendant need not find himself in . . . [that] position." *Bruner*, 819 F. Supp. at 813 (granting stay; citation omitted).

Plaintiffs argue that the prejudice to Delbosque and Parker is speculative because they have not been indicted. (D.E. 36-2 at 7-8.) However, the ongoing investigation into the SOS team of the non-indicted defendants, based on conduct very similar to that alleged in the Complaint, indicates that the Fifth Amendment implications are very real to the non-indicted defendants as well. *See generally, e.g., Nat'l Acceptance Co. of Am. v. Bathalter*, 705 F.2d 924, 927 (7th Cir. 1983) (teaching that "it is only when there is but a fanciful possibility of prosecution that a claim of Fifth Amendment privilege is not well-taken.") (internal citation and quotation marks omitted); *Bruner*, 819 F. Supp. at 816 (summarizing Fifth and Second Circuit caselaw concerning the proposition that "a *pre-indictment* assertion of the [Fifth Amendment] privilege is proper," and supports a stay under some circumstances) (emphasis in original); *Fed. Ins. Co. v. Tabb*, No. 90 C 3211, 1991 WL 113204, at *1-2 (N.D. Ill. June 7, 1991) (impending indictment against one of several defendants in civil suit supports general stay).

In addition, since Herrera is likely to invoke the Fifth Amendment, that will likely impair Delbosque and Parker's discovery efforts in preparing a defense. *See, e.g., All Meat and Poultry Prods.*, 2003 WL 22284318, at *4 ("Weighing in favor of the unindicted defendants' motion for a stay is the likelihood that the indicted individual defendants['] assertions of the Fifth Amendment will confound their discovery efforts in defense of the civil litigation."); *Bruner*, 819 F. Supp. at 816 & n.6 (collecting cases and holding that stay was warranted against all defendants because "it would be prejudicial . . . to stay this case as to some, but not all of the Defendants"). Therefore it would be prejudicial to Delbosque and Parker to allow discovery to proceed against them but not Herrera.

(5) Convenience of the Court in the Management of its Cases

A general stay of discovery, at least at the present time, is also prudent regarding the proper management of the case and the discovery process. As the Court noted in the hearing on Delbosque and Parker's motion to stay discovery, it would not be feasible to have a targeted stay as to certain discovery issues. (D.E. 36-3 at 4.) Plaintiffs' claims apply to all defendants (D.E. 44 ¶ 22), and the incident in the Complaint overlaps with the subject matter of the grand jury investigation such that it is not possible to carve out certain issues or defendants for discovery. *See, e.g., Bruner*, 819 F. Supp. 2d at 816 (since case would be unlikely to move forward without discovery from indicted defendant, it is "wasteful of judicial resources to stay this case as to some, but not all of the Defendants"). Furthermore, a stay would promote judicial efficiency since "resolution of the criminal matter may eliminate much of the Court's work in the civil action by simplifying the issues." *Id.; see also Benevolence Int'l Found., Inc. v. Ashcroft*, 200 F. Supp. 2d 935, 941 (N.D. Ill. 2002) (stay is appropriate where it "will circumvent duplicative efforts by the two judges in the parallel civil and criminal cases"); *Midas Int'l Corp. v. G.V. & G. Transp. Servs.*, No. 97 C 2180, 1987 WL 18916, at *2 (N.D. Ill. Oct. 18, 1987) (noting that "it is possible that the criminal proceedings will eliminate the need for some discovery in the civil case and will possibly resolve some issues"). A stay might streamline

**STATEMENT**

Plaintiffs' case if criminal convictions are secured, since it appears that in this context "evidence of a prior criminal conviction is admissible in a civil proceeding as *prima facie* evidence of the facts upon which the conviction is based if those facts are relevant to some issue involved in the civil proceeding." *Calusinski v. Kruger*, 24 F.3d 931, 934 (7th Cir. 1994) (internal quotation marks and citation omitted). This would seem to mitigate Plaintiffs' concern that allowing a stay will give Defendants an unfair advantage because it will allow them "to wait and see what evidence is against them before answering Drake's charges." (D.E. 36-2 at 9.) Since a conviction might allow Plaintiffs to establish facts through collateral estoppel but an acquittal would not do the same for the Defendants, a stay does not necessarily advantage the Defendants in subsequent litigation at all. It may, in fact, work to the advantage of the Plaintiffs.

    (6)    Public Interest

The State's Attorney's Office apparently is concerned about the effect that civil discovery would have on their investigation. (D.E. 36-3 at 2.) While the Court has not yet required the State's Attorney's Office to appear to address this subject specifically in light of its ongoing grand jury investigation, the representations of counsel for the City of Chicago about the concerns expressed to her by the State's Attorney's Office do no more than express a near truism of criminal prosecution: that it is certainly not an attractive option to have the prosecution's universe of potential witnesses in a police corruption case "outed" and deposed, when extensive mechanisms in the criminal law arena typically prevent those consequences. Witnesses in criminal cases are rarely, if ever, forced to be deposed, and the government's witnesses, particularly in a case such as a police corruption case, need not be disclosed until the eve of trial, if one ever occurs as opposed to the entry of guilty pleas. As defense counsel in this case also represented (D.E. 36-3 at 2), and as the Plaintiffs have themselves suggested (D.E. 36-2 at 9), there is the possibility that some of the non-indicted officers may by called to testify against Herrera and other officers in the criminal proceeding. If the Court were to allow discovery to proceed, a defendant's status as a cooperating witness might come to light where it had not previously. This "outing" of the State's cooperating officers also would typically be viewed as sub-optimal, at best, to law enforcement authorities attempting to investigate and prosecute a police corruption case. To the extent the at-least-presently-unindicted Defendants are not cooperating, they are clearly subjects, and more likely targets of the grand jury investigation, which presents them with the same Fifth Amendment quandary as Herrera.

This case is distinguishable from cases such as *SEC v. Dresser Indus.*, 628 F.2d 1368 (D.C. Circuit 1980), cited by Plaintiffs, in which the Court found that "[e]ffective enforcement of the securities laws requires that the SEC and Justice [Department] be able to investigate possible violations simultaneously." *Id.* at 1377; *see also Cruz*, 1997 WL 370194, at *3 ("The relevant inquiry . . . [in determining the public interest factor] is whether a stay would enable the defendants to engage in some continuing wrong."). In this case, by contrast, it appears that the public interest would be better served if civil discovery did not interfere with the current criminal investigation. *See Jones*, 216 F.R.D. at 452 (stating that "[t]he public also has an important interest in a potential, untainted criminal prosecution" based on the events giving rise to the claim); *United States v. Michelle's Lounge*, No. 91 C 5783, 1992 WL 194652, at *5 (N.D. Ill. Aug. 6, 1992) (where "a criminal indictment has been filed and a continuing criminal investigation is underway relating to the same criminal scheme which is at issue in . . . [the government's civil forfeiture action], discovery should not proceed at this time. Conducting civil discovery while the related criminal investigation is continuing would compromise that investigation."). Although the public also has an interest in civil claimants seeking redress when alleged wrongs are inflicted upon them, the discovery stay is not permanent and Plaintiffs will be allowed to proceed at some point in the future.

Case 1:06-cv-06893   Document 56   Filed 06/11/2007   Page 10 of 12

## STATEMENT

(7) Alternatives to the Current Stay

In their reply brief, Plaintiffs suggest that the Court could allow the proceeding to be conducted under seal, so that any statements or documents do not reach the State's Attorneys Office. (D.E. 51 at 5). But even if the discovery proceeds under seal, Defendants would still face the choice of whether to invoke the Fifth Amendment and risk an adverse inference in the civil case, or testify and risk later prosecution or use of such testimony against them, since even depositions under seal might well become public knowledge should this case go to trial or should subsequent summary judgment motions or other pleadings be filed in which the depositions are exhibits. *See generally, e.g., Baxter Int'l, Inc. v. Abbott Laboratories*, 297 F.3d at 544, 546-47 (7th Cir. 2002) (explaining that documents are virtually never kept under seal under such circumstances). Plaintiffs also do not explain how any party could legitimately forestall production of under-oath testimony about subjects within the scope of a grand jury investigation, in response to a boilerplate grand jury subpoena from state authorities, though a civil "confidentiality order."

In this regard, the Court acknowledges that another district court apparently has ordered in another case that "all oral and written discovery answers . . . including, *inter alia*, deposition testimony" of indicted officers who are civil defendants in that case shall be subject to "attorneys' eyes only" treatment, and that such designated material "may not be disclosed to any person outside of this litigation for any reason." D.E. 61 in *Padilla v. City of Chicago, et al.*, 06 C 5462 (Shadur, J.). In that case, Judge Shadur also seemingly has ordered such non-disclosure treatment concerning the evidentiary productions, including deposition testimony, of at-least-presently-unindicted police officer/civil defendants. (D.E. 60.) Plaintiffs' attorneys appear to suggest that this sort of order might somehow allow the Defendants in this case to testify without invoking the Fifth Amendment and without fear that their testimony could be used against them in the ongoing criminal investigation. Plaintiffs' attorneys offer no authority supporting the idea that a district court could attempt to prevent production of such testimony to the grand jury, upon service of a simple criminal subpoena, and the motion that prompted Judge Shadur's orders also offered no authority in that regard. The Court would, of course, read and review such authority if it were tendered, but at first blush, at least, these "Attorneys' Eyes Only" orders seem to be of little, if any, protection to any Fifth Amendment interests at play. As far as this Court is aware, a civil defendant in that situation would be in no better position, vis-a-vis a failure to invoke the Fifth Amendment, than if such an order did not exist at all. In sum, this Court is unaware of any basis by which this Court could preclude production of sworn testimony that would bear on a felony grand jury's work in the state courts. As a result, a civil defendant in a case with such a "sealing order" would not get any protection from the need to invoke the Fifth Amendment if discovery were to go forward.

Plaintiffs also suggest a "protective order to prevent inquiries into Herrera's indicted crimes," (D.E. 51 at 5), but such a protective order would not cover crimes that are currently being investigated. Such a protective order would also be difficult or impossible to craft since the indicted crimes overlap substantially with allegations in Plaintiffs' Complaint, as previously discussed.

(8) Plaintiffs' Other Arguments

Most of Plaintiffs' arguments have been addressed above. However, a couple of them merit a specific final response. First, Plaintiffs' attorneys suggest that their "investigation" about the scope of the grand jury's activities reveals that the grand jury's work does not encompass matters at issue in this case. (D.E. 36-2 at 11.) With all respect, this contention reflects a lack of appreciation about how prosecutors and grand jury investigations work—particularly as they relate to police corruption investigations, a subject with which this Court is quite familiar. Prosecutors generally do not tell individuals if they currently are non-targets of a grand

## STATEMENT

jury investigation, particularly if those individuals might be induced to plead without an indictment or cooperate with the investigation in return for future considerations. That dynamic is even more true when public officials are involved. So, the fact that Officers Parker and Delbosque have not been specifically informed that they are targets or non-targets of the grand jury is unexceptional—and certainly not a basis for drawing some negative-implication sort of conclusion, against the weight of common sense and experience, that they are outside the scope of a grand jury investigation into the activities of their self-contained police team when that investigation has already produced criminal indictments. Likewise, prosecutors are even less likely to tell attorneys for plaintiffs in civil suits—which attorneys admit that they intend on trying to depose civilian witnesses concerning episodes that do not even involve their clients, with respect to a civil RICO claim that squarely overlaps with the subject matter of pending criminal indictments—about the scope of a grand jury's work and who the prosecution's potential witnesses are. This refusal to discuss the scope of a grand jury investigation with third-parties is typically *required* by applicable grand jury secrecy rules, and at a minimum it reflects a commonsense concern about "outing" witnesses and having one's witnesses deposed by civil lawyers (including civil defense attorneys for putative targets of the grand jury investigation) whose interests do not typically conform with those of the prosecution team and often materially conflict with it. So, again, the idea that the prosecution's failure to affirm that the scope of the grand jury investigation implicates this case—including the open-ended and potentially sprawling civil RICO allegations offered in this case—is not sensibly understood to indicate that the allegations in this case fall outside the scope of the grand jury's activities. This is particularly true given that the actual charges already returned in criminal indictments (including charges against one of the civil Defendants in this case, which Defendant is alleged by Plaintiffs to be a co-conspirator of the remaining Defendants in this case) overlap with allegations in the Plaintiffs' pending complaint.

The Court also notes that it agrees with Plaintiffs that the movants seeking a stay of discovery, including a discretionary stay designed to balance the pluses of immediate discovery as against the desire to accommodate Fifth Amendment interests of the movant-parties, bear the burden of justifying a stay. However, Plaintiffs simply err in suggesting that stays cannot be granted concerning individuals who have not yet been indicted, as there are many cases where such stays have been granted. *See, e.g., Bruner Corp*, 819 F. Supp. at 816 & n.6 (collecting cases where stay addressed both current parties in criminal and civil cases as well as related civil defendants who were not presently defendants in the criminal case); *All Meat and Poultry Prods.*, 2003 WL 22284318, at *4 (collecting cases and stating, "[i]n such instances as here, where the indicted individual defendants appear to be central figures in both the civil and criminal proceedings, courts have determined that the better course is to enter a stay as to all defendants"); *accord Doe*, 360 F. Supp. 2d at 881. Moreover, while the Court agrees that a litigant cannot invoke the Fifth Amendment where the possibility of criminal prosecution is fanciful, or ludicrous, or simply precluded as a matter of law, Plaintiffs fail to cite a case that suggests that a Court should abandon common sense in evaluating whether a party seeking a stay has credibly contended that he is exposed to potential criminal indictment or has very real Fifth Amendment interests implicated by an ongoing grand jury investigation that has already produced indictments of colleagues on a self-contained specialty unit within a police department. Any responsible prosecutor—and Plaintiffs' counsel have offered no basis for their implicit criticism of the integrity and *bona fides* of the state prosecution—would and will pursue all available information and will seek to indict any appropriate targets who can be shown to have engaged in criminal misconduct. As a result, the idea that Officers Parker and Delbosque are subjects or targets of the grand jury is virtually a truism, and hardly something that the Court reasonably can disregard as mere speculation or conjecture. As the Court has stated repeatedly, this Court will evaluate in the future whether a continued stay of discovery—particularly as to Officers Parker and Delbosque—is appropriate; for the present at least, a stay of discovery is warranted by the circumstances presented.

| STATEMENT |
|---|

The Court also notes that Plaintiffs appear to contend at times that in the absence of a pending indictment against a stay-movant, it simply is impermissible to grant a stay of discovery as to that individual. While a stay of discovery as against a defendant who has been indicted (like Officer Herrera here) is more commonplace, caselaw reflects numerous instances where stays of discovery have been granted concerning presently unindicted civil defendants such as Officers Parker and Delbosque here. *See, e.g., Doe*, 360 F. Supp. 2d at 881; *Bruner Corp*, 819 F. Supp. at 816 & n.6 (collecting cases); *All Meat and Poultry Prods.*, 2003 WL 22284318, at *4 (collecting cases). Their fear of imminent indictment is a sensible one, and their invocation of very real and concrete Fifth Amendment concerns—to say nothing of the independent harm that would likely eventuate if Plaintiffs' counsel and the civil defendants' counsel were allowed to plow into depositions of a universe of potential grand jury witnesses—are all very real. While the Court reserves the right to lift the discovery stay in the future, for the present time, the Court has discretion to stay discovery so as to afford respect for the Fifth Amendment interests of the civil Defendants here. In addition, the public interest would not be well served by allowing Plaintiffs' attorneys and their defense counterparts in this civil litigation to begin "outing" and deposing individuals who are predictably part of the grand jury investigation. As a result, for all of the reasons stated above, the motion to reconsider the present discovery stay is denied pending further review, as appropriate, on a go-forward basis.

Finally, the Court notes that Plaintiffs' citation of *United States v. Certain Real Property*, 943 F.2d 721 (7th Cir. 1991), does not suggest a different result. First, the Seventh Circuit determined that the appellant's objection about his failure to obtain a discovery stay had been waived. *See id.* at 729 ("We agree with the government that this issue has been waived."). Moreover, the decision expressly recognized that a district court has discretion to issue a stay of discovery in a civil case where there are related criminal proceedings. *Id.* at 729 n.9. The facts and circumstances of this case make clear that the Fifth Amendment concerns expressed by the civil Defendants here are real and not fanciful. The Court is not required to enter a discovery stay, but for all the reasons stated above, the Court concludes that one is appropriate, both to respect the Fifth Amendment interests of the Defendants and also to prevent disruption of ongoing grand jury proceedings by the expansive proposed depositions and discovery suggested by Plaintiffs' counsel.

CONCLUSION

After considering all of the present facts and circumstances in the case, the Court concludes that the most appropriate course in this case is a stay of discovery. As previously explained, Plaintiffs are free to revisit this subject at a future juncture (*e.g.*, 90 or 120 days), at which time further information may be available that bears on the propriety of maintaining the discovery stay. However, at the present time, the Court believes a stay of discovery is appropriate for all of the reasons explained above. For these reasons, Plaintiffs' reconsideration motion is respectfully denied—subject to the clarifications set forth above.